IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OSCEOLA WILLIAMS,<br>SUSAN CARTER and<br>OSCEOLA PERDUE, as Co-Administrators of the Estate of<br>ALEXANDER McCLAY WILLIAMS,<br>Deceased,<br>                Plaintiffs,<br><br>v.<br><br>JOSEPH RUTALA, ESQUIRE, As The Administrator of the Estate of OLIVER N. SMITH, Deceased, and as the Administrator of the Estate of MICHAEL TRESTRALL;  MARK HALPERN, as Administrator of the Estate of LOUIS A. BLOOM, Deceased; and DELAWARE COUNTY,<br>                Defendants. | CIVIL ACTION<br><br>NO.  24-2132 |

HODGE, J.                                                                                                                              May 21, 2025

**MEMORANDUM**

      The passage of time does not lessen the pain and anguish for the family of Alexander McClay Williams. This case arises out of tragic circumstances: a falsely accused child, police misconduct, coerced confessions, and the Commonwealth's undisputed wrongs. In 1931, Alexander McClay Williams, a 16-year-old Black boy was wrongfully tried, convicted, and executed for the murder of a white woman. In 2022, due to Williams' family's tireless advocacy, Delaware County and the Governor of Pennsylvania acknowledged the horror of what had happened, and Williams' conviction was vacated. Now, his estate seeks damages for the civil rights violations he endured and the harm his family suffered as a result. The Estate has brought claims against Delaware County and individual defendants for civil rights violations pursuant to 42 U.S.C.

§ 1983 and related state causes of action. Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim.

I. BACKGROUND[1]

A. Parties

The Plaintiffs in this case are the co-administrators of the Estate of Alexander McClay Williams ("the Estate"). (ECF No. 1 at 1.) Susie Carter, age 94, is the sister of Alexander, and his last living sibling. (*Id.* at 14.) Osceola Williams and Osceola Perdue are both nieces of Alexander. (*Id.*)

The Estate brings claims under Pennsylvania state law and 42 U.S.C. § 1983 against Delaware County and three named individual defendants ("the Individual Defendants"): Joseph Rutala, Esq. is named is the administrator of the estates of Oliver Smith, who was the Chief Delaware County Detective at the time of Williams' arrest; Michael Trestrall was a Delaware County detective during Williams' arrest. (ECF No. 1 at 5.); Mark Halpern is named as administrator of the estate of Louis A. Bloom, an Assistant District Attorney at the time of Williams' arrest. (*Id.*)

B. Robare Murder and Williams' Conviction and Execution

Taking Plaintiffs' claims as true, the facts are as follows. On October 3, 1930, Vida Robare was murdered by stabbing in her apartment at the Glenn Mills School in Delaware County. (ECF No. 1 ¶ 27.) Robare was a 34-year-old woman who worked as a school matron at the Glenn Mills School. (*Id.*) There were no witnesses to the stabbing, and no one was seen leaving the apartment building. (*Id.* ¶ 32.) The murder investigation was handled by the Delaware County District Attorney's office, with Chief County Detective Oliver Smith working on the case. (*Id.* ¶ 33.)

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

Robare lived with her husband Fred and her ten-year-old son Dale in Cottage Five at the Glenn Mills School, where 48 Glenn Mills students also lived. (*Id.* ¶ 34.) Glenn Mills School housed 600 boys in total; these boys were referred to as "inmates." (*Id.*)

The murder prompted media attention. On October 4, 1930, the Chester Times quoted Detective Smith saying that the crime was committed by a strong, full-grown man, and that the victim, Ms. Robare, was fit enough to have fought off a boy. (*Id.* ¶ 35.) Another witness stated that all 600 Glenn Mills School students were accounted for at the time of the murder. (*Id.*) On October 7, 1930, the Chester Times wrote that the murderer may have been a woman. (*Id.* ¶ 38.) Then, on October 10, the Chester Times reported that assistant district attorneys and detectives had decided to question Alexander McClay Williams, a 16-year-old Glenn Mills Student. (*Id.* ¶ 39.) Williams initially denied involvement in the murder, but over the course of at least five interrogations, each without an attorney or parent present, he confessed to the crime. (*Id.* ¶¶ 39, 40.) The newspaper wrote that Williams made three separate confessions, twice on October 7, 1930, and again on October 9, 1930. (*Id.*) It appears that as of October 7, 1930, the only suspect the district attorney was considering was Williams. (*Id.* ¶ 47.) The only evidence against Williams was his confession; there was no physical evidence tying Williams to the murder. (*Id.* ¶ 47.)

Williams' trial took place in January 1931. (*Id.* ¶ 42.) He was represented by William H. Ridley, Esq., the first African American lawyer to join the Delaware County Bar Association. (ECF No. 1-2 at 2.) During the trial, Detective Michael Trestrall testified that Williams had admitted to kicking Robare in the ribs during the assault. (*Id.* ¶ 43.) On January 7, 1931, Williams was convicted; he was sentenced just weeks later on February 27, 1931, to death. (*Id.* ¶ 44.) His attorney moved for a new trial, but the motion was denied. (*Id.* ¶ 45.) Williams was executed by the Commonwealth of Pennsylvania on June 8, 1931. (*Id.* ¶ 46.) Plaintiffs allege that Williams'

death certificate was altered so that his age was recorded as 18—an adult—rather than the 16-year-old child he actually was. (*Id.* ¶ 83.) Williams remains the youngest person ever put to death in Pennsylvania. (ECF No. 1-2 at 2.)

### C. Williams' Exoneration

Williams' sister, Plaintiff Susie Carter, alongside, Sam Lemon, Attorney Ridley's great-grandson, worked together to bring justice for Alexander Williams. (ECF No. 1 ¶ 71; ECF No. 1-2 at 4.) In 2017, Williams' record was expunged. (ECF No. 1-2 at 5.) On June 13, 2022—ninety-one years after Williams was put to death—the Delaware County Court of Common Pleas vacated Williams' conviction. (*Id.* ¶ 71; ECF No. 1-1 at 2; ECF No. 1-2 at 2 ("[T]oday's decision is an acknowledgement that the charges against him should never have been brought.").) In a statement from the District Attorney Office regarding their agreement to vacate the conviction of Alexander Williams, the District Attorney was quoted saying that "this young man was entitled to the protections of our Constitution, particularly the Fifth Amendment's protections against self-incrimination and the Sixth Amendment's right to counsel. We believe that this young man's constitutional protections were violated in an irreparable way." (ECF No. 1-2 at 4.)

On October 7, 2022, Pennsylvania Governor Tom Wolf issued a proclamation declaring that "Williams' due process rights were violated: he was interrogated by police without a lawyer or parent present, his confessions were inconsistent and likely coerced, and Vida Robare's death certificate was apparently doctored by authorities;" acknowledging that "the conviction and execution of Alexander McClay Williams was an egregious miscarriage of justice," and apologizing to Susie Williams-Carter and the Williams family. (ECF No. 1-4 at 2-3.) The family of Alexander McClay Williams now seeks accountability for his death at the hands of the Commonwealth by filing this action against the Individual Defendants and Delaware County.

4

## II.     LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. at 678 (citation omitted). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Applying the principles of *Iqbal* and *Twombly*, the Third Circuit articulated a three-part analysis to determine whether a complaint will survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010). This three-prong inquiry involves the following: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

The pleading standard does not require a plaintiff to establish the elements of a *prima facie* case, but they must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (internal citations omitted). "[C]onclusory or 'bare-bones' allegations will [not] survive a motion to dismiss." *Id*. at 210. "To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." *Id*.

### III. ANALYSIS

#### A. Plaintiffs' § 1983 Claims are Not Barred by *Heck*.

Defendants offer a blanket opposition to all of Plaintiff's § 1983 claims and its claim for malicious prosecution, arguing that Williams' conviction was not overturned by "a state tribunal authorized to make such a determination," as required by *Heck v. Humphrey*, 512 U.S. 477, 486-7 (1994). (ECF No. 7 at 16.) Defendants argue that the Delaware County Court of Common Pleas' June 13, 2022 Order granting Williams' Post-Sentencing Motion Seeking a New Trial was entered by a court without authority to make such a determination, and therefore is a legal nullity. (*Id.* at 17.) In support of this contention, Defendants cite to Pennsylvania law limiting Pennsylvania courts' jurisdiction to modify an order to 30 days after its entry. (*Id.* at 17-18 (citing 42 Pa. C.S. § 5505).)

Defendants state that although they do not believe Plaintiffs may bring their § 1983 claims under the current procedural posture, the Plaintiffs could petition for post-conviction relief under the Pennsylvania Post Conviction Relief Act, and, if unsuccessful, for a writ of habeas corpus in this Court. (ECF No. 7 at 18.)

Plaintiffs respond that for this Court to declare that the Delaware County Court of Common Pleas' order vacating Williams' conviction was a legal nullity would in turn interfere with principles of federalism and comity, and that there is no statutory authority for this Court to do so. (ECF No. 8 at 6-7.) Furthermore, Plaintiffs argue that the Court of Common Pleas did have legal authority to vacate the conviction. (*Id.* at 7) Plaintiffs point to an exception to 42 Pa. C.S. § 5505, extending the time limit to file a post-order motion in instances of "fraud or its equivalent." 42 Pa. C.S. § 5504. The fraud that occurred, according to Plaintiffs, was "the false evidence used to convict Mr. Williams." (ECF No. 8 at 8.)

The Court is not particularly convinced by either side's argument regarding 42 Pa. C.S. § 5505, which gives a court 30 days to "modify or rescind any order." 42 Pa. C.S. § 5505. The statute is not, as Defendants suggest, meant to be an impenetrable procedural barrier preventing egregious wrongs from being righted, even if it takes years to do so. The Pennsylvania Supreme Court has acknowledged as much, stating "that [§ 5505] 'was never intended to eliminate the inherent power of a court to correct obvious and patent mistakes in its orders, judgments and decrees.'" *Com. v. Holmes*, 933 A.2d 57, 65 (Pa. 2007) (citing *Com. v. Cole*, 263 A.2d, 339, 341 (Pa. 1970)). Nor, as Plaintiffs offer, is it completely accurate to label what happened to Alexander Williams as "fraud," particularly given that the fraud exception explicitly precludes criminal proceedings. *See* 42 Pa.C.S. § 5504.

However, the Court agrees with Plaintiffs that it is not this Court's role to second guess or invalidate a legitimate order issued by a judge on the Delaware County Court of Common Pleas. Nothing in Judge Kelly's order suggests that his Honor was performing a symbolic act nor that his order not legally binding. (*See* ECF No. 1-1 at 2.) As Plaintiffs note, Judge Kelly's order was "based on the *collectively* filed Motion of both the 'defense and prosecution,'" and that "[a]cting through [Delaware County] District Attorney Stollsteimer, the Commonwealth not only joined in the Petition to overturn Williams' conviction, but also make the decision to *nolle pross* the case." (ECF No. 8 at 4.) District Attorney Stollsteimer made public statements recognizing the vacatur of Williams' conviction. (ECF No. 1-2 at 2.) This is a rare and notable occurrence where the state and the defense speak with one voice.

Delaware County cannot join these Plaintiffs in moving for a new trial, and then, when the Plaintiffs seek a financial remedy for the harm their family has suffered, turn around and declare that the vacatur has no legal weight. If the Delaware County District Attorney believed there was

7

something legally improper about Judge Kelly's order, the appropriate mechanism to challenge it would have been to appeal the order. The County did not do so, and this Court will not do so now. It is not the place of this Court to question what was clearly a legally valid order from the Court of Common Pleas.

In *Heck v. Humphrey*, the Supreme Court held that that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, *declared invalid by a state tribunal authorized to make such determination*, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486-7 (1994) (emphasis added). Because Judge Kelly's order vacating Williams' conviction was proper, Plaintiff's § 1983 claims are not barred by *Heck*.

### B. Wrongful Death (Count I) and Survival Action (Count II)

Defendants argue that Plaintiffs' wrongful death and survival actions are barred in their entirety and must be dismissed for two reasons: the statute of limitations has expired, and all of the defendants are statutorily immune from suit. (ECF No. 7 at 11.)

The parties agree that the statute of limitations for both tort claims in Pennsylvania is two years. (*Id.* at 12, 14; ECF No. 8 at 8.) Defendants argue that the statute of limitations began to run on the date of Williams' death, and therefore, expired two years after his death, on June 8, 1933. (ECF No. 7 at 13.) Plaintiffs disagree with when the statute of limitations began to run, asserting the clock did not start until after the conviction was vacated by the Delaware County Court of Common Pleas.

Defendants further assert that even if the statute of limitations has not expired, these Defendants are immune from suit. (ECF No. 7 at 13-14.) Under Pennsylvania law, municipalities are immune from state law claims, unless the claims fall under one of nine exceptions,[2] none of which apply here. (*Id.* (citing 42 Pa.C.S. §§ 8541-42).) Employees acting within the scope of their official duties are immune to the same extent as their employer agency. (*Id.* (citing 42 Pa.C.S. §§ 8545).) According to Defendants, because Defendants are all immune from tort liability, the wrongful death claim must be dismissed.

Plaintiffs respond that both the wrongful death and survivor actions have been asserted pursuant to § 1983. (ECF No. 8 at 9-10.) Therefore, according to Plaintiffs, the statute of limitations has not expired, because under *Heck* the statute of limitations does not begin to run until a defendant obtains a favorable outcome, which in this case did not occur until June 9, 2022.[3] (*Id.* at 9; *see Heck*, 512 U.S. 477, 489-90 (1994).) On the issue of immunity, Plaintiffs do not otherwise address the argument presented by the Defendants. However, Plaintiffs do point to caselaw from this District allowing § 1983 wrongful death and survivor actions to go forward at the motion to dismiss stage. (*Id.* at 10 (citing *Moyer v. Berks Heim Nursing Home*, No. 13-CV-4497, 2014 WL 1096043, at *3-4 (E.D. Pa. Mar. 20, 2014) ("At this early stage of the litigation, I will not dismiss the § 1983 wrongful death claim.")))

However, Defendants point out that nowhere in Plaintiffs' complaint do they mention § 1983 in conjunction with the wrongful death or survival actions. (ECF No. 9 at 4.) Moreover,

---

[2] These exceptions involve areas which are the responsibility of government actors: vehicle liability; care, custody, or control of personal property; real property; trees, traffic controls and street lighting; utility service facilities; streets; sidewalks; care, custody or control of animals; and sexual abuse. 42 Pa. C.S. § 8542(b).

[3] Although Plaintiffs reference *Heck's* "well-settled" principle, Plaintiffs do not cite to a specific page or statement by the Court in *Heck* to supports that claim. This is a pattern that occurs throughout Plaintiffs' briefing. As the Plaintiff prepares to file supplemental briefing on the qualified immunity issue, the Court reminds Plaintiffs that it is the responsibility of the party to provide caselaw and any other evidence in support of its arguments.

Defendants argue, "the Complaint already includes § 1983 claims that would substantially duplicate its post hoc recharacterization of its state law claims." (*Id.*)

The Court agrees with Defendants' characterization of these state law claims. The complaint mentions only the state law wrongful death and survival statutes; there is no mention of § 1983 with respect to those claims. (*See* ECF No. 1 ¶¶ 89-94.) Therefore, they will be evaluated as state law tort claims.[4] As Defendants rightfully note, state law wrongful death and survivor actions are tort actions subject to a two-year statute of limitations from the date [of death]. *See* 42 Pa.C.S. § 5524(2). Defendants are also correct that municipalities and their employees acting within the scope of their official duties are immune from tort liability. *See* 42 Pa.C.S. §§ 8541.

For these reasons, the state law wrongful death and survival claims (Counts I and II) are dismissed. However, the Court recognizes that other courts have allowed wrongful death and survival actions to go forward under § 1983. *See, e.g.*, *Moyer*, 2014 WL 1096043; *Becker v. Carbon Cnty.*, 177 F. Supp. 3d 841, 854 (M.D. Pa. 2016). Therefore, amendment is not futile, and Plaintiffs may amend their complaint if they believe they can plead these claims pursuant to § 1983.

### C. Qualified Immunity for Claims Against the Individual Defendants

Defendants argue that even if this Court were to let all of Plaintiff's federal claims survive, the Individual Defendants cannot be sued because they are entitled to qualified immunity. (ECF No. 7 at 22.)

In evaluating a claim of qualified immunity, courts consider two prongs: first, "a court must decide whether the facts that a plaintiff has shown make out a violation of a constitutional

---

[4] Defendants also argue that neither the wrongful death action nor the survivor action are properly the subject of a § 1983 claim. (ECF No. 9 at 4.) However, the Court need not address that argument, because they were not pled as such in the present complaint.

right." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (internal quotations omitted). Second, "the court must determine whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (internal citations omitted); *see also Pena v. City of Lancaster*, 690 F. Supp. 3d 494, 506 (E.D. Pa. 2023).

Defendants argue that Plaintiffs have failed to identify a constitutional right that was violated with specificity, therefore, they cannot show that the rights were clearly established at the time. (ECF No. 7 at 22-23.) According to Defendants, "[the Estate] alleges that evidence was fabricated, but not what evidence; it alleges that evidence was withheld but, again, not what evidence; it challenges the 'conduct' of the Individual Defendants, but fails to set forth what conduct is at issue; it alleges that witness statements were coerced, but fails to identify which witness statements, who did the coercion, or how; it alleges that Williams' confession was false, but fails to explain how it was wrongfully obtained." (*Id.* at 23.)

Defendants also contend that some of the rights that the Estate points to were not clearly established at the time of Williams' murder. (ECF No. 7 at 23.) For example, the Estate alleges that Williams' interrogation was conducted without an attorney or parent present, but the right to counsel during interrogations was not recognized by the Supreme Court until *Escobedo v. State of Illinois*, 378 U.S. 478 (1964).

Plaintiffs respond that "[t]he fact that Alexander McClay Williams was arrested, forced to give a coerced confession and then executed in the electric chair establishes that he was deprived of his rights," therefore the only question is whether those rights that were violated were clearly established at the time of Williams' prosecution, conviction, and execution. (ECF No. 8 at 13.) Plaintiffs argue that "the use of false evidence and coerced confessions were clearly established

11

for a long time before the events giving rise to this lawsuit," and that the Individual Defendants were on notice about these rights. (*Id.* at 13-14.)

The Third Circuit addressed a similar issue in *Thomas v. Indep. Twp.*, 463 F.3d 285 (3d Cir. 2006), *abrogated on other grounds by Ashcroft v. Iqbal,* 556 U.S. 662 (2009).[5] In *Thomas*, an individual brought civil rights claims under § 1983 against a township and individual defendants who serves on the Township Board of Supervisors. *Thomas*, 463 F.3d at 289.

In support of their qualified immunity defense, the individual defendants did not argue "that their conduct as alleged in the complaint does not violate clearly established law." *Thomas*, 463 F. 3d at 289. Instead, the individual defendants made a novel argument, claiming:

> plaintiffs' complaint is subject to dismissal on the basis of qualified immunity because the complaint does not contain any factual allegations that would negate their qualified immunity defense. More specifically, the Individual Defendants claim that they are entitled to qualified immunity because the complaint does not contain factual allegations supporting a claim of violation of clearly established law.

*Thomas*, 463 F.3d at 291. The Third Circuit held that the individual defendants' argument lacked merit, "because it conflates qualified immunity with the merits of a plaintiff's cause of action under § 1983." *Id.* at 292. The Supreme Court has made clear that a plaintiff has no "duty to plead facts relevant to a qualified immunity defense in order to state a claim." *Id.* (citing *Gomez v. Toledo*, 446 U.S. 635, 639-40 (1980)). In *Gomez*, the Supreme Court stated unequivocally that "two—and only two—allegations are required in order to state a cause of action under [§ 1983]. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." 446 U.S. at 640.

---

[5] "Although the *Thomas* decision dealt with the notice pleading standard that has since been abrogated by the Supreme Court in *Iqbal*, the court does not find that the pleading requirements of *Iqbal* affect the general holdings of *Thomas*." *Zion v. Nassan*, 727 F. Supp. 2d 388, 404 (W.D. Pa. 2010)

The court in *Thomas* recognized that although plaintiffs are not required to plead facts relevant to a qualified immunity, "there is an inherent tension between federal qualified immunity jurisprudence and the concept of notice pleading." *Thomas*, 463 F.3d at 299. "On one hand, the Supreme Court has stated that resolution of the qualified immunity defense entails a fact-specific inquiry. . . . On the other hand, the simplified notice pleading standard requires a complaint to plead only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)). In *Thomas*, the Third Circuit acknowledged that plaintiffs' complaint, though it arguably met the Rule 8 pleading standard, alleged "the kinds of broad propositions of law that cannot guide a court in determining whether a constitutional right is clearly established." *Id.* at 300. One solution, the court wrote, is to grant (sua sponte, if necessary) a motion for a definite statement under Rule 12(e), demanding "more specific factual allegations from the plaintiff concerning the conduct underlying the claims for relief." *Id.* at 301. Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

It is clear to the Court that constitutional violations occurred when Alexander Williams was falsely accused, coerced into confessing, and subsequently tried, convicted, and executed in a matter of months. Mr. Williams was denied his due process, which the Commonwealth has acknowledged. (ECF No. 1-4 at 2). The Court nevertheless agrees with Defendants here that the Plaintiffs have failed to provide sufficient facts to determine precisely what rights were violated and how, whether those rights were clearly established at the time, and perhaps most of all, the role of each of the Individual Defendants in violating Williams' rights.

13

For these reasons, the Court, pursuant to Federal Rule of Civil Procedure 12(e), will order Plaintiffs to submit a more definite statement including specific factual allegations related to the conduct Plaintiffs allege violated Mr. Williams' constitutional rights. The statement must also be specific as to the role of these Individual Defendants in the conduct. This statement shall be submitted to the Court within 14 days of the date of this Order, after which time Defendants, if they deem it appropriate, may submit an amended Motion to Dismiss. Until that time, the Court declines to rule on the issue of qualified immunity. Because qualified immunity must be addressed "at the earliest possible stage in litigation," *see Pearson v. Callahan*, 555 U.S. 223, 231 (2009), the Court will not address any of the other arguments related to Plaintiffs' claims against the Individual Defendants (Counts III-IX, XI) until the qualified immunity question is resolved.

### D. 42 U.S.C. § 1983 Municipal Liability Claim (All Plaintiffs v. Delaware County) (Count X)

Defendants' singular argument regarding Plaintiffs' municipal liability claim against Delaware County is that the claim is barred by *Heck*. Because the Court has ruled that Williams' conviction was validly vacated and Plaintiffs' § 1983 claims are not barred by *Heck*, no argument remains as to this cause of action. Therefore, Plaintiffs' municipal liability claim against Delaware County may go forward. Defendants' motion to dismiss Count X is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion is granted in part and denied in part. An appropriate order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**
_____
**HODGE, KELLEY B., J.**